Appeal No. 22-1385

_____

**United States Court of Appeals
For The Fourth Circuit**

_____

Gregory Krehbiel,

*Plaintiff-Appellant,*

v.

BrightKey Corp.,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____

**PLAINTIFF-APPELLANT'S PRINCIPAL BRIEF**

Michael E. Rosman
Michelle Scott
CENTER FOR INDIVIDUAL
RIGHTS
1100 Connecticut Ave. NW Suite 625
Washington, DC 20036
(202) 833-8400

Attorneys for Gregory Krehbiel

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-1385          Caption: Krehbiel v. BrightKey

Pursuant to FRAP 26.1 and Local Rule 26.1,

Gregory Krehbiel
(name of party/amicus)

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

12/01/2019 SCC                          - 1 -

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
       If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
       If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Michael E. Rosman                          Date:          4/21/2022

Counsel for: Appellant Gregory Krehbiel

Print to PDF for Filing

Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      I.     THE COURT BELOW ERRED IN CONCLUDING THAT THE
             AMENDED COMPLAINT DID NOT ALLEGE A CLAIM FOR
             RACE DISCRIMINATION IN EMPLOYMENT  . . . . . . . . . . . . . . . 7

      II.    THE COURT BELOW ABUSED ITS DISCRETION IN
             DISMISSING WITH PREJUDICE WITHOUT ALLOWING
             PLAINTIFF AN OPPORTUNITY TO AMEND HIS RACE
             DISCRIMINATION IN EMPLOYMENT CLAIM  . . . . . . . . . . . . . 11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Table of Authorities

Cases

*Adams v. Southwest Virginia  Regional Jail Auth.*, 524 Fed. Appx. 899 (4th Cir. May 13, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bender v. Elmore & Throop, P.C.*, 963 F.3d 403 (4th Cir. 2020) . . . . . . . . . . . . . . 7

*Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385 (5th Cir. 1971) . . . . . . 8

*Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277 (4th Cir. 2004) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Kitchings v. Integral Consulting Services, Inc.*, 2021 U.S. Dist. LEXIS (D. Md. Aug. 5, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lawton v. Weil Foot & Ankle Institute*, 2021 U.S. Dist. LEXIS 25828 (N.D. Ill. Feb. 10, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Reeves v. Sanderson*, 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Roy v. Correct Care Solutions, LLC*, 914 F.3d 52 (1st Cir. 2019) . . . . . . . . . . . . . 7

*Shager v. Upjohn Co.*, 913 F.2d 398 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 9

*Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022) . . . . . . . . . . . . . . . . . . . 7

*Weigel v. Maryland*, 950 F. Supp. 2d 811 (D. Md. 2013) . . . . . . . . . . . . . . . . . . . 13

*Whitten v. Apria Healthcare Group, Inc.*, 2015 U.S. Dist. LEXIS 61060 (D. Md. May 11, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Statutes and Rules

28 U.S.C. § 1292(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 2000e-5(f)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

Fed. R. Civ. P. 12(g)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

Other Authority

EEOC Compliance Manual . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## Jurisdictional Statement

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3).  This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 because the order appealed from disposed of all remaining issues in the lawsuit.  The order was filed on March 4, 2022 (JA34), and plaintiff timely appealed on April 1, 2022 (JA35).

## Statement of Issues

1.      Did the court below err in concluding that plaintiff's complaint did not assert a claim for employment discrimination on the basis of race?

2.      Did the court below abuse its discretion in dismissing the race discrimination claim with prejudice, not allowing plaintiff to file an amended pleading?

## Statement of The Case

Given that the court below dismissed this action on a Rule 12(b)(6) motion, the allegations of the amended complaint must be accepted as true.  They assert that Plaintiff Gregory Krehbiel is a former employee of Defendant BrightKey Corp.  Krehbiel is white.  JA18 (Amended Complaint  ("Am. Compl.") ¶ 3).  He is a

publishing, marketing, fulfillment, and operations professional. Defendant BrightKey retained Krehbiel in December 2019 as a consultant to perform tasks relying on this expertise. BrightKey hired Krehbiel in February 2020 as a full-time employee with the title Vice President of Operations. His primary tasks were supervising and overseeing client support and warehouse operations. His superiors at BrightKey told him that he was doing good work, and he received a $10,000 bonus because of the excellence of his work shortly after he began working there. JA19 (Am. Compl. ¶ 5).

The amended complaint also alleges that Krehbiel puts out a podcast with a friend of his where the two assess craft beers and speak about various issues of the day, including controversial public issues. Prior to starting full-time employment with BrightKey, Krehbiel spoke with BrightKey's President Rita Hope Counts to apprise her of the podcast and website, and make sure that it would not be objectionable to BrightKey. Ms. Counts told Krehbiel that what he did on his own time was his business and would not affect his employment at BrightKey. In reliance on BrightKey's promise concerning his off-the-job activities, Krehbiel accepted full-time employment at BrightKey. JA19-20 (Am. Compl. ¶¶ 6-7).

In two podcasts, Krehbiel and his co-host discussed various government policies, *viz.*, diversity requirements and goals in various settings and special legislation prohibiting "hate crimes" (that is, crimes motivated by a dislike for

individuals because of their membership in groups defined by specific prohibited criteria). During the podcasts, Krehbiel expressed skepticism over the propriety of government policies relating to diversity goals and "hate crimes." The podcasts in question came to the attention of employees of BrightKey who objected strenuously to a white person like Krehbiel expressing such views. Specifically, they claimed that Krehbiel, because of his race, was advocating "white privilege" and should be terminated from his position as Vice President of Operations. They communicated this demand to BrightKey. JA20 (Am. Compl. ¶¶ 8-9).

The employees walked off their jobs and refused to work in order to pressure BrightKey into firing Krehbiel. They were motivated by Krehbiel's race and political opinions in demanding that he be terminated. JA20 (Am. Compl. ¶ 10).

Despite its earlier promise to Krehbiel that his off-the-job podcast was his own business and would not affect his role at BrightKey, BrightKey quickly acceded to the wishes of the objecting employees and fired Krehbiel. In acceding to their demands, BrightKey knew that the objecting employees were motivated by Krehbiel's race in insisting that he be fired. JA20-21 (Am. Compl. ¶ 11). In short, the objecting employees asked BrightKey to fire Krehbiel because of his race, and BrightKey agreed.

Following his firing, Krehbiel has had difficulty finding work and has lost

income.   He also has lost his employer-supplied health insurance and suffered

emotional distress, insomnia, and depression as a consequence of BrightKey's firing

him because of his race and political opinions, his difficulty in finding work during

the Covid-19 pandemic, and the damage to his good name.  JA21 (Am. Compl. ¶¶ 12-

13).

This action commenced on November 15, 2021 with the filing of the initial

complaint.  JA5.  That complaint asserted three claims for relief: race discrimination

in employment in violation of various federal, state, and local laws (including Title

VII of the Civil Rights Act of 1964); political discrimination in employment in

violation of Howard County local law; and breach of contract.  After BrightKey

answered the initial complaint (JA12) and moved for a partial dismissal (solely against

the claim for breach of contract), Krehbiel filed an amended complaint that added a

fourth claim for relief for negligent misrepresentation.  JA18.  Although it already had

answered discrimination claims in the initial complaint that were identical to the ones

in the amended complaint, and had not moved to dismiss them, BrightKey then moved

to dismiss the entire amended complaint.

The court below granted BrightKey's motion with respect to Krehbiel's race

discrimination claim, and declined to exercise supplemental jurisdiction with respect

to the state law claims.  JA25-33.  With respect to the race discrimination claim, the

court below concluded that Krehbiel had not alleged that his firing was because of his race. Specifically, it held that the employees who asked management to fire Krehbiel because of his race were not supervisory employees and, accordingly, their discriminatory motive could not be attributed to BrightKey. JA31.

## Summary of Argument

The court below ignored the key allegations of the amended complaint. The pleading did not "merely [allege] that biased employees pressured BrightKey into firing him." JA31. It alleged that those biased employees communicated their racial bias to BrightKey and asked BrightKey to fire Krehbiel because of his race. And BrightKey agreed to do so knowing full well what their motivation was. By doing so, BrightKey *itself* discriminated on the basis of race. One need not attribute anyone else's discriminatory motive to BrightKey when BrightKey itself engaged in racial discrimination.

The court below relied on one case from this Court which is completely distinguishable. In that case, and other so-called "cat's paw" cases, there are biased employees seeking to have an adverse employment action taken against someone because of an improper motive, and the *decision-makers are unaware of that motive*. When decision-makers *are* aware of another's discriminatory motive, and agree to act

upon it, it is the decision-makers, and not the "others," who have engaged in employment discrimination.  The court below ignored a long line of authority so holding.

Finally, assuming *arguendo* that the amended complaint did not adequately state a claim for race discrimination, the court below abused its discretion in refusing to allow Krehbiel to amend.  In response to the initial complaint, BrightKey *answered* the claim of race discrimination and only moved against a breach of contract claim. *Cf.* Fed. R. Civ. P. 12(g)(2) (providing that an available defense not set forth in a Rule 12 motion cannot be asserted in a subsequent Rule 12 motion).  While it is true that Krehbiel filed an amended complaint, that pleading only added a state law claim for relief; it did not change substantively the claim for race discrimination.  Accordingly, BrightKey's motion to dismiss the amended complaint, and the court's decision on it, were the first times that *anyone* had purported to identify a flaw in Krehbiel's race discrimination claim.   The failure to permit Krehbiel the opportunity to replead his race discrimination claim was inconsistent with cases in this Court finding an abuse of discretion for failing to permit an opportunity to amend.

Argument

## I. THE COURT BELOW ERRED IN CONCLUDING THAT THE AMENDED COMPLAINT DID NOT ALLEGE A CLAIM FOR RACE DISCRIMINATION IN EMPLOYMENT

This Court reviews an order dismissing a claim for relief on a Rule 12(b)(6) motion *de novo*. *Strickland v. United States*, 32 F.4th 311, 347 (4th Cir. 2022). The allegations of the complaint must be accepted as true. *Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 405 (4th Cir. 2020). While conclusory allegations need not be accepted, all reasonable inferences from the facts alleged must be drawn in Plaintiff's favor. *Id.*

The amended complaint alleges that BrightKey was fully aware of the objecting employees' discriminatory and racial motivation and agreed to do what they asked. JA20-21 (Am. Compl. ¶ 11). The court below made no mention of this allegation at all (JA27), nor suggest that it was in any way defective. Under those circumstances – where an employer knowingly adopts a discriminatory motivation – that discriminatory motivation becomes the employer's. It is the *employer* who has discriminated on the basis of race (or any other prohibited criteria), not anyone else. *E.g.*, *Roy v. Correct Care Solutions, LLC*, 914 F.3d 52, 71 (1st Cir. 2019) ("A third party's retaliatory or discriminatory animus can cause an employer's adverse action where, as a jury might find here, the employer knew that animus motivated the third-

party's actions or demands and simply accepted those actions or demands," and cases cited therein); *Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385, 389 (5th Cir. 1971) (holding that airline's policy of hiring only female cabin attendants could not be justified by customers' alleged preference for female cabin attendants; "it would be totally anomalous if we were to allow the preferences and prejudices of the customers to determine whether the sex discrimination was valid"); *Lawton v. Weil Foot & Ankle Institute*, 2021 U.S. Dist. LEXIS 25828, at *16 (N.D. Ill. Feb. 10, 2021) (denying summary judgment on an ADA retaliation claim where a reasonable trier of fact could conclude that employer was motivated by the hostility of plaintiff's co-employee because of an ADA lawsuit plaintiff filed against co-employee's company); EEOC Compliance Manual, Section 12, Part II(B) ("If an employer takes an action based on the discriminatory preferences of others, *including co-workers or clients*, the employer is unlawfully discriminating.") (available at https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftnref141) (emphasis added).  The courts did not need to "impute" the discriminatory motive of a third party to the employer in these cases because the employer has itself adopted that discriminatory motive.

The court below ignored the allegations of the amended complaint and ignored this line of cases.  In its analysis, it relied on a decision of this Court holding that the

motivation of a subordinate who did not make a final decision with respect to an

adverse action could not be attributed to the employer if the subordinate did not have

supervisory or disciplinary authority over the plaintiff.  JA31 (citing *Hill v. Lockheed*

*Martin Logistics Management*, 354 F.3d 277 (4th Cir. 2004).

In *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277 (4th Cir.

2004) (en banc), this Court reviewed a grant of summary judgment.  The plaintiff had

conceded that, on three occasions, she had violated the various rules that led to her

termination, conceded that there was no discrimination at all surrounding the

reprimand for one of them, and conceded that both her immediate supervisors and the

management level agents who effected her firing had no improper motive.  *Id.* at 292-

98.  This Court (after a rather detailed examination of the summary judgment

evidence) simply held that she had not provided any evidence that management's

decision was influenced by the alleged discriminatory motivation of a co-employee

(a safety inspector) who had reported two of the three rules violations.  *Id.*

Prior to its analysis of the evidence, this Court reviewed some cases loosely

characterized as "cat's paw" cases – ones where a final decisionmaker simply rubber

stamps the decision of a subordinate with a discriminatory motivation.  For example,

this Court discussed the Seventh Circuit decision in *Shager v. Upjohn Co.*, 913 F.2d

398 (7th Cir. 1990), where Judge Posner first introduced the "cat's paw" phrase and

the court held that an employer could not escape liability by rubber stamping the discriminatory decision of plaintiff's supervisor; but if the employer's decision-making committee had made an independent decision free from animus, there would be no liability. *Hill*, 354 F.3d at 288. Similarly, this Court discussed the Supreme Court's decision in *Reeves v. Sanderson*, 530 U.S. 133 (2000), where the Supreme Court had held that the discriminatory animus of another employee precluded a finding of judgment as a matter of law for the employer because there was evidence that that employee had influence over the actual decisionmakers. *Hill*, 354 F.3d at 288-89.

But the relevance of these cases here is the fact that the actual decisionmakers were unaware of any improper motivations. *Hill*, 354 F.3d at 288 (noting that the plaintiff in *Shager* "was technically fired by a 'Career Path Committee' *which was unaware of the supervisor's prejudice*.") (emphasis added); *id.* (noting that in *Reeves* "there was no direct or circumstantial evidence that the formal decisionmakers for the employer harbored a discriminatory motivation"). So, too, in *Hill* itself, there was no evidence presented that the actual decisionmakers were aware of any discriminatory motivation of the safety inspector who had identified plaintiff's errors. Thus, the question in those cases is whether the nondiscriminatory motivation of those actually making the decision insulates the employer from liability (which is, usually, a fact-

intensive question).

These cases have nothing in common with the facts alleged here. The amended complaint does not allege that the fellow employees who objected to Krehbiel's continued employment on racial grounds made the decision to fire him. Nor does it allege that BrightKey was unaware of the racial basis for the request that he be fired or that BrightKey itself had some independent, non-racial basis for firing him. To the contrary. It alleges that BrightKey was asked to fire Krehbiel because of his race, agreed to do so, and then did so. Under these circumstances, it is completely unnecessary to determine how much supervisory authority those fellow employees had anymore than it is necessary to determine how much authority a misogynistic customer who does not want to deal with a female employee of a company has when the company decides to impose an adverse employment action against the female employee because of the customer's antipathy. The company adopting a discriminatory preference of *anyone* and acting upon it has *itself* discriminated on the basis of a prohibited criteria.

## II.   THE COURT BELOW ABUSED ITS DISCRETION IN DISMISSING WITH PREJUDICE WITHOUT ALLOWING   PLAINTIFF AN OPPORTUNITY TO AMEND HIS RACE DISCRIMINATION IN EMPLOYMENT CLAIM

In a footnote on the final page of its decision, the court below ruled as follows:

"Given that Plaintiff had an opportunity to amend his initial Complaint, dismissal with

prejudice of these [racial discrimination in employment] claims is appropriate." JA33 n.3.

This ruling is disingenuous. Krehbiel amended his complaint *as of right* after BrightKey *answered* the initial complaint with respect to the claim for racial discrimination in employment. JA12-JA17. The amendment simply added a state law claim. Even if BrightKey had not waived its right to move against the racial discrimination claim in an amended pleading – *but see* Fed. R. Civ. P. 12(g)(2) – neither BrightKey nor the court identified, or gave Krehbiel notice of, any defects in the racial discrimination claim. To the contrary, BrightKey's decision to *answer* that claim in the initial complaint gave Krehbiel every reason to believe that BrightKey agreed that it adequately stated a claim. Accordingly, Krehbiel's "opportunity" to amend its complaint was irrelevant to whether it should be given an opportunity to correct any flaws in the specific claim that the court dismissed.

In general, dismissals for failure to state a claim under these circumstances should be without prejudice unless amendment would be futile or there were earlier opportunities to correct identified defects. *E.g., Adams v. Southwest Virginia Regional Jail Auth.*, 524 Fed. Appx. 899, 900 (4th Cir. May 13, 2013) ("Where no opportunity is given to amend the complaint, the dismissal should generally be without prejudice."); *Whitten v. Apria Healthcare Group, Inc.*, 2015 U.S. Dist. LEXIS

61060, *12-13 (D. Md. May 11, 2015) (dismissing wrongful discharge claim without prejudice where plaintiff failed to identify a specific public policy that the discharge violated in her complaint; "Generally, the plaintiff should be afforded the opportunity to amend, . . . or dismissal should be without prejudice.").

The two cases cited by the court below in its final footnote are not to the contrary.  In *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825-826 (D. Md. 2013), the court stated:

> "[P]leading is [not] a game of skill in which one misstep by counsel may be decisive to the outcome . . . the purpose of pleading is to facilitate a proper decision on the merits." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (internal quotation marks omitted). When a plaintiff fails to state a claim, he "should generally be given a chance to amend the complaint . . . before the action is dismissed with prejudice." (internal citation omitted).

In *Kitchings v. Integral Consulting Services, Inc.*, 2021 U.S. Dist. LEXIS 146980 (D. Md. Aug. 5, 2021), the defects in the initial complaint were pointed out in a pre-motion letter, and the court (a) permitted the plaintiff to fix those defects and (b) warned that dismissal in the future might be with prejudice.  *Id.* at *1-*2.

Thus, *Weigel* and *Kitchings* are competely distinguishable here, where neither defendant nor the Court identified any defect in the race discrimination in employment claim prior to dismissal with prejudice.

13

Conclusion

For the foregoing reasons, the judgment below dismissing Krehbiel's race discrimination claim with prejudice should be reversed.

/s/ *Michael E. Rosman*
Michael E. Rosman
Michelle Scott
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave., NW, Suite 625
Washington, DC 20036
(202) 833-8400

Attorneys for Plaintiff-Appellant Gregory
     Krehbiel